IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 05, 2014

**STATE OF TENNESSEE v. JAMES JONES**

**Appeal from the Criminal Court for Shelby County**
**No. 1007798     James M. Lammey, Jr., Judge**

_____

**No. W2013-01257-CCA-R3-CD  - Filed July 9, 2014**

_____

Defendant, James Jones, was charged by indictment with the offense of aggravated robbery.
A jury found him guilty of the lesser included offense of facilitation of aggravated robbery,
a Class C felony. At the sentencing hearing, the trial court denied Defendant's request to be
placed on judicial diversion. Instead, the trial court sentenced Defendant to serve four years
of incarceration. Defendant raises one issue on appeal. He argues that the trial court should
have ordered judicial diversion. After a thorough review of the record and the parties' briefs,
we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JAMES CURWOOD
WITT, JR. and ROBERT W. WEDEMEYER, JJ., joined.

Danielle N. Mitchell, Memphis, Tennessee, for the appellant, James Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; Ahmed A. Safeeullah, Assistant
Attorney General; Amy P. Weirich, District Attorney General; and Jessica Banti and Bryce
Phillips, Assistant District Attorneys General, for the appellee, the State of Tennessee.

**OPINION**

Taken in the light most favorable to the State regarding evidence proving Defendant's
guilt of facilitation of aggravated robbery, the proof showed that Ms. Lachon Wright and Mr.
Jerry Bogan planned the aggravated robbery of the victim, Mr. Johnny Smith. Mr. Bogan
was armed with a handgun. Defendant was a "lookout" for the aggravated robbery. On the
night of August 10, 2010, Ms. Wright, who was acquainted with the victim and had dated

him once or twice, called the victim and asked him to drive to her location at the Thompson Court Apartments in Memphis. Ms. Wright told the victim that she wanted him to drive her to get some food for her child. The victim agreed to the request, and Ms. Wright told him she would be near the leasing office at the apartments.

When the victim arrived, he drove up to Ms. Wright and parked his Ford Explorer. Ms. Wright opened the passenger door but did not get into the vehicle. Soon, Mr. Bogan appeared at the open driver's side door or window (the victim was not sure) and pointed his handgun at the victim's head. Another male, also with a handgun, stood beside Ms. Wright at the open passenger door. Mr. Bogan told the victim to give him everything he had in his possession. The victim handed over his cell phone, his wrist watch, and fourteen dollars in cash. The victim saw a third male walk across in front of his vehicle. He could not identify any of the three males he saw during the aggravated robbery.

Defendant gave a statement to police in which he admitted that he was involved in the aggravated robbery as a "lookout" and that Mr. Bogan was armed with a 9 mm handgun. Defendant said that he, Mr. Bogan, and Ms. Wright were present, and that it was either Mr. Bogan or Ms. Wright who had the idea to rob the victim. Defendant did not mention any third male being present. Regarding the sequence of events constituting the actual aggravated robbery, Defendant's statement said,

> I seen [Ms. Wright] walking toward the [victim's] door and opened the door. When she opened the door I seen [Mr. Bogan] snatch the [victim's] door open[,] point the gun at [the victim] and scream "give me everything you got." [Ms. Wright] struck out running. I made sure he was alright and waited until I seen [Mr. Bogan] snatch the money out of the [victim's] hand so then I took off running to the house. I was in the house about a minute and [a half] when [Mr. Bogan] came running up and knocking on the door. He said ["][M]an that man was broke he didn't have nothing but $14 and a cell phone.["]

Also, Defendant testified in his defense at trial. He denied being the "lookout" for the aggravated robbery. Defendant testified that parts of his statement to police were taken out of context. He testified that he was looking out for Mr. Bogan's best interests by encouraging Mr. Bogan to not commit aggravated robbery - Defendant never intended to convey that he participated in the aggravated robbery by being the "lookout."

At the sentencing hearing, Defendant chose to provide an allocution rather than give sworn testimony. In his allocution Defendant: (1) admitted he was present when the aggravated robbery occurred; (2) stated he did not have a gun; (3) asserted Mr. Bogan did the

aggravated robbery by himself; (4) stated he was scared and ran; and (5) said the "right thing" for Defendant to have done would have been to call the police. Defendant stated he did not currently have a job and he lived with his child's mother. The mother of Defendant's child testified and acknowledged that Defendant resided with her and stated that Defendant cooked and cleaned their home and cared for their child and her other child by another man. Defendant contributed financially to household expenses from money he made by cutting hair and doing tattoos. She admitted that Defendant was not licensed to do tattoos. Defendant's mother's testimony was that Defendant's attitude and ability to meet responsibilities had improved since his conviction. She felt that if Defendant was granted judicial diversion that he would continue to be a good citizen.

**Analysis**

Judicial diversion, as provided for by our General Assembly in Tennessee Code Annotated section 40-35-313 for Defendant's offense which occurred in 2010, allowed the trial court to defer further proceedings against a "qualified defendant" after a guilty plea or conviction, and place the defendant on probation without entry of a judgment of guilty. Successful completion of probation would lead to dismissal of the charge and expungement of all public criminal records. Tenn. Code Ann. § 40-35-313(a)(1)(A), (2), and (b). (2010 Rplc.). A "qualified defendant" at the time of Defendant's offense was defined as a defendant who

> (a)     Is found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;
>
> (b)     Is not seeking deferral of further proceedings for a sexual offense, a violation of § 71-6-117 or § 71-6-119, or a Class A or Class B felony; and
>
> (c)     Has not previously been convicted of a felony or a Class A misdemeanor.

Tenn. Code Ann. § 40-35-313(a)(1)(B)(i).

The appellate standard of review of a trial court's decision to grant or deny judicial diversion is abuse of discretion accompanied by a presumption of reasonableness, when the trial court considers the common law factors set forth in *State v. Electroplating, Inc.*, 990 S.W.2d 211 (Tenn. Crim. App. 1998) and *State v. Parker*, 932 S.W.2d 945 (Tenn. Crim. App. 1996), places on the record the reasons for granting or denying judicial diversion, and specifically identifies the relevant common law factors. *State v. Kiara Tawshawn King*, ____

S.W.3d \_\_\_\_, 2014 WL 1622210 at *9 (Tenn. Apr. 23, 2014). The trial court is not required to recite each *Parker* and *Electroplating* factor, but the record should reflect the trial court considered all the factors and identified factors that are applicable to the case under consideration. So long as there is any substantial evidence to support the trial court's decision to grant or deny judicial diversion when the trial court has complied with this procedure, the trial court must be affirmed. *Id.* The common law factors are:

(1)     the defendant's amenability to correction

(2)     circumstances of the offense

(3)     the defendant's criminal record

(4)     the defendant's social history

(5)     the defendant's physical and mental health

(6)     the deterrence value to the defendant as well as to others

(7)     will judicial diversion serve the ends of justice to both the defendant and the public

*Kiara Tawshawn King*, 2014 WL 1622210 at *8.

As to these seven factors the trial court *indicated* that Defendant's amenability to correction was in favor of denying judicial diversion because Defendant had previously been involved in a home burglary while a juvenile. However, the trial court failed to make any definitive determination about this factor. Regarding the circumstances of the offense the trial court concluded that the proof showed Defendant was actually culpable of aggravated robbery, and this weighed against granting judicial diversion.

The trial court found that Defendant had no criminal record except for his "contact" with juvenile court on the home burglary matter, and noted that there was nothing to indicate that Defendant had been found delinquent. Again, the trial court made no definitive determination whether this factor weighed for or against granting judicial diversion.

The trial court found that Defendant's social history was not good because, in the trial court's words,

-4-

[Defendant] was a child of parents that were never married; and it perpetuates itself. No one seems to learn that all you have to do, get your education, get married, have your kids after you get married, and you do not raise - you do not end up in poverty. It's the simplest thing - it's the easiest - it's the easiest formula to avoid being raise[d] in poverty and end up going to prison instead of college, but no one seems to learn. It's just a sad sick situation. So, his social history is typical. It's not good; in fact its very bad.

We are constrained to conclude that whether a defendant is the child of an unmarried mother is not the type of fact which should be a negative mark on a defendant's social history when determining the appropriateness of judicial diversion. Likewise, whether a defendant's child is born to married or unmarried parents should not be a factual consideration. However, whether a Defendant supports his or her minor child(ren) is a proper consideration for social history. There is no evidence in the record that Defendant willfully fails to support his minor child. However, Defendant's employment history is scant, and the record reveals he earns untaxed income as an unlicensed tattoo artist. These two facts, not mentioned by the trial court, weigh against granting judicial diversion.

The trial court found that there was no evidence of problems with Defendant's physical or mental health, and therefore that factor was neutral. The trial court also concluded that the deterrence factor could not be considered against the granting of judicial diversion because the State failed to submit any proof of "how pervasive aggravated robbery is" in the jurisdiction despite the fact, "[w]e have stats everywhere on this issue."

Finally, the trial court found that judicial diversion would not serve the ends of justice to the public and the defendant, and this factor thus weighed against granting judicial diversion. The trial court stated that he did not believe Defendant's testimony that was self-exculpatory. The trial court found that Defendant would be unlikely to successfully complete a period of probation related to judicial diversion, implicitly because of Defendant's lack of credibility.

Considering our supreme court's holding in *Kiara Tashawn King*, we conclude that the trial court met the very minimum of requirements in this case in order for its decision to be entitled to the standard of review of an abuse of discretion with a presumption of reasonableness. The trial court made several remarks about the unfortunate standard of living of many people in Shelby County and how that directly applied in a negative manner to Defendant's case. We respectfully disagree with the trial court's implicit findings that this situation applies negatively toward Defendant's entitlement to judicial diversion. However, the trial court did make legitimate findings under two of the factors which weighed against granting judicial diversion: the circumstances of the offense, and the determination that

-5-

judicial diversion would not serve the ends of justice. Additionally, even though the trial court applied inapplicable facts to find that Defendant's social history weighed against granting judicial diversion, we do find uncontradicted facts in the record to support his factor. Accordingly, we conclude that the trial court did not err by denying judicial diversion. Defendant is not entitled to relief in this appeal.

The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE